Mark Potter Esq., SBN 166317
Krista Hemming, SBN 304213
Tehniat Zaman, SBN 321557
**POTTER HANDY, LLP**
100 Pine Street, Ste. 1250
San Francisco, CA 94111
Phone: (858) 375-7385; Fax: (888) 422-5191
Email: TEMUlit@potterhandy.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re: Whaleco, Inc. Malware Litigation<br><br>Plaintiff(s),<br><br>vs.<br><br>WHALECO, Inc., d/b/a TEMU; PDD Holdings, Inc., f/k/a PINDUODOU Inc.; and DOES 1-100, inclusive,<br><br>Defendant(s). | **CASE NO. 2:25-cv-04651-MRA-MA**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>Judge: Hon. Monica Ramirez Almadani<br>Magistrate: Hon. Maria A. Audero<br>Hearing Date: August 25, 2025<br>Time: 1:30 pm |

## I. INTRODUCTION

Plaintiffs case against the Defendants is one of nineteen cases alleging the same set of facts and circumstances. This case along with seven other related cases were filed in California state court on or about March 24, 2025. This matter along with those seven related cases were removed to federal court on or about May 23, 2025, and were consolidated by the court on July 11, 2025. Currently there are eleven more similar and

related cases that have been filed in California State Court, and are expected to be removed to Federal Court and subsequently Noticed as a related case of these consolidated cases. In all cases the Plaintiffs are registered users of the Temu e-commerce platform.

Now that the case is situated in Federal Court Defendants seek to dismiss this action under the doctrine of forum non conveniens, or in the alternative transfer the action to the Eastern District of New York based on a forum selection clause embedded in the terms of service use agreement for Temu users.

Due to the complexity of this and related actions, it would be inappropriate and detrimental to Plaintiffs to have the matter dismissed. Rather, Plaintiffs argue that because Plaintiffs did not unambiguously manifest assent to the terms and conditions when navigating the TEMU interface, no binding agreement was formed. Since no valid agreement was formed the Court should deny the motion and allow the case to continue.

## II. FACTUAL BACKGROUND

Plaintiffs (collectively "Plaintiffs") are similarly situated individuals who downloaded and used the Temu mobile application ("Temu App"), an online shopping platform operated by Defendant Whaleco Inc. and controlled by Defendant PDD Holdings Inc. to browse and purchase goods. Without Plaintiffs' knowledge or consent, the Temu App secretly accessed, collected, and transmitted Plaintiff's personal and sensitive information, including but not limited to biometric data, communications, contact lists, location data, and system-level access to his device.

The Defendants intentionally designed the Temu App to circumvent standard security protocols and conceal the scope of its surveillance capabilities, thereby misappropriating Plaintiffs' sensitive information without knowledge or consent.

Plaintiffs downloaded the Temu App and used/shopped on the app and/or platform, thereby subjecting Plaintiffs to personal and private data misappropriation by Defendant.

Plaintiffs asserts that such unauthorized and deceptive conduct violates both federal and California state laws, including but not limited to the Electronic Communications

Privacy Act, the Computer Fraud and Abuse Act, the California Comprehensive Data Access and Fraud Act, the California Invasion of Privacy Act, the California Consumer Privacy Act, the California Unfair Competition Law, the California False Advertising Law, the Right of Privacy under the California Constitution and common law principles of intrusion upon seclusion.

On or about March 24, 2025, this case along with seven other related cases were filed in California state court. All of these matters, as listed below have since been removed to federal court on or about May 23, 2025 and consolidated on July 11, 2025.

a) Victor Smith V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04661

b) Marcalett Wideman V. Whaleco, Inc., et al. – Federal Case No. 2:25-cv-04660

c) Breeaunna Henry V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04668

d) Juan Ramos V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04675

e) Laura Coles V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04651

f) Johnny Hart V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04671

g) Melisha Jones V. Whaleco, Inc., et al. - Federal Case No. 2:25-cv-04677

Currently there are eleven more similar and related cases that have been filed in California State Court, that are expected to be removed to Federal Court and subsequently noticed as a related case of this instant case. These cases are listed below:

a) Tamara Jones V. Whaleco, Inc., et al. – State Court Case No. 25STCV18014

b) Taumaia Brown V. Whaleco, Inc., et al. – State Court Case No. 25STCV15747

c) Patrick Perry V. Whaleco, Inc., et al. - State Court Case No. 25STCV16041

d) Mary Moore V. Whaleco, Inc., et al. – State Court Case No. 25STCV15721

e) Kelvin Gray V. Whaleco, Inc., et al. – State Court Case No. 25STCV17789

f) Kenneth Brown V. Whaleco, Inc., et al. – State Court Case No. 25STCV17792

g) Hanna Yoseph V. Whaleco, Inc., et al. - State Court Case No. 25STCV16019

h) Jaafar Baseer V. Whaleco, Inc., et al. – State Court Case No. 25STCV17888

i) Ashwin Jacob V. Whaleco, Inc., et al. – State Court Case No. 25STCV17882

j) Bernard Headspeth V. Whaleco, Inc., et al. – State Court Case No. 25STCV17878

k) Jessica Calderon V. Whaleco, Inc., et al. - State Court Case No. 25STCV17300

In all cases the Plaintiffs are registered users of the Temu e-commerce platform. In all cases the allegations are the same and share identical causes of action.

To become a registered user, individuals are prompted to create an account by filling in an email and password. The user is then prompted to register. In small print under the large “Register” button, it simply states “by clicking Register, you agree to our Terms of Use and Privacy Policy”(see below screen shot taken from the Temu “sign in” page).




At no point were users presented with the specific contractual terms with a prompt to check a box explicitly stating “I agree”.

Temu’s terms of service contains both an Arbitration Agreement (Def. Mot to Dismiss, Exhibit A, p. 21, Section 19) and an “Exclusive Venue” clause (Def. Mot to Dismiss, Exhibit A, p. 20, Section 18.4), which designates New York, New York courts for any litigation not subject to the Arbitration agreement.

## III. ARGUMENT

Although a district court has discretion under § 1404, a motion to transfer is not to be liberally granted. *Ayling v. Travelers Prop. Cas. Corp.,* 1999 WL 994403, 1999 U.S. Dist. LEXIS 16716 (E.D.Pa.1999) (*citing Stewart Organization v. Ricoh, Inc.,* at 29, 108 S.Ct. 2239). The burden of establishing the need to transfer rests with the movant, and Plaintiff's choice of venue "should not be lightly disturbed". *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878 (3d Cir.1995).

### 1. The Motion To Dismiss Should Be Denied Because The Plaintiffs Did Not Legally Assent To The Terms Of Service And Therefore, Did Not Validly Form A Contract.

In determining whether the parties have agreed to a particular terms of service, federal courts apply state law principles of contract formation. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (2022) Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct. *Id.* However, "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id*. See Also: Restatement (Second) of Contracts § 19(2) (1981).

These elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed. *Berman* at 856.

The Ninth Circuit has established that the enforceability standard for online agreements, especially clickwrap and browsewrap contracts must: (1) be provided with clear

and conspicuous notice of the terms; and (2) take an unambiguous affirmative action indicating assent. Finally, a website layout cannot obscure or diminish the importance of these notices.

A. Plaintiffs were not provided with clear and conspicuous notice of the terms.

A key tenant of contract law involves sufficient notice of the terms being offered. When it comes to online agreements there are two types of such agreements. The first is "so called "clickwrap" agreement, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171,1175-76 (2014). In that scenario, the consumer has received notice of the terms being offered and, in the words of the Restatement, "knows or has reason to know that the other party may infer from his conduct that he assents" to those terms. Restatement (Second) of Contracts § 19(2). As a result, courts have routinely found clickwrap agreements enforceable. *Id.* at 1176.

On the other end of the spectrum are "browsewrap" agreements. "Browsewrap" agreements occur when a website offers terms that are disclosed only through a hyperlink, and the user "supposedly manifests assent to those terms simply continuing on to use the website". *Id*. Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were offered, must less that that continued use of the website will be deemed to manifest acceptance of those terms. *Id*. (*See* also *Berman* at 856).

Here, Temu's registration page does not provide clear and conspicuous notice of the terms of use. First, the hyperlink to the Terms of Use is not prominent; it is embedded in a small font, below the primary call-to-action, the Register button. Further, the user's action of clicking "Register" is not clearly labeled as assent to a contract. It merely states that "by clicking Register, our agree to our Terms of use and Privacy Policy". There is no evidence that users are directed to click on the terms of service, or that they must scroll through or affirmatively accept the arbitration or forum selection clauses before completing

registration.

This design and flow mirror the terms of service at issue in *Berman*. In that case the Ninth Circuit Court of Appeals found that when a registration button does not clearly state that clicking the button signifies acceptance of terms, and there is no affirmative checkmark mechanism, the click cannot constitute assent. Similarly, Temu's "Register" button is ambiguous; it does not explicitly tell users that they are entering into a contract that includes important legal waivers of rights.

Further, Temu's mobile app and website interface failed to put a reasonably prudent user on notice of the forum-selection clause. The clause was tucked away in full Terms of Use, accessible via a hyperlink during account registration. The text referencing the Terms was in a small, inconspicuous font and embedded in a dense block of other text and overshadowed by more prominent interface elements, precisely the kind of design the Ninth Circuit has found insufficient such as in the case of *Berman*. The burden is on Temu to prove the app's design gave users clear notice of the Terms. Yet Temu's registration screen did not require Plaintiffs to independently open or review the Terms, nor did the terms highlight the forum clause specifically.

As plaintiffs were not provided with clear and conspicuous notice of the terms, and what legal rights that Plaintiffs would be giving up when they registered with Temu. The lack of notice of itself makes the contract unenforceable.

B. <u>Plaintiffs did not take any unambiguous affirmative action indicating assent.</u>

Additionally, Plaintiffs' did not take any unambiguous affirmative actions that indicated formal assent. Court have generally upheld clickwrap" agreements to indicating formal as the website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating "I agree" in order to proceed. *Nguyen* at 1175 (2014). In contrast, Temu's registration screen (as shown in the image above) only includes a "Register" button with the language "By clicking Register, you agree to our Terms of Use and Privacy Policy". The language is presented in small, non-prominent font, it is not

visually emphasized and appears below the register button. There is no dedicated checkbox or a separate "I Agree" button that would require users to consciously and affirmatively indicate consent to the terms.

Temu's registration process does not satisfy the standard set out by the Ninth Circuit Court of Appeals in *Berman* for establishing enforceable assent to online terms, particularly for clauses involving arbitration or forum selection. The lack of a clearly labeled "I Agree" button or checkbox, Prominent notice of the Terms of Use, or direct acknowledgment or review of key legal clauses, renders these provisions unenforceable. Plaintiffs did not validly assent, and therefore, Temu cannot rely on these clauses to enforce a forum selection clause.

**2. <u>The Motion To Dismiss Should Be Denied Because Even If The Court Finds Plaintiffs' Entered A Valid Contract, Defendants 12(B) Motion To Dismiss Is Premature As The Dispute Is Subject To A Binding Arbitration Clause Which Supersedes The Forum Selection Clause.</u>**

The Federal Arbitration Act "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes". *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). When it comes to the enforceability of an arbitration clause over other clauses in the contract, courts have consistently held that it comes down to the intent of the parties.

A contract containing a forum selection clause supersedes an arbitration agreement where "the forum selection clause[ ] ... sufficiently demonstrate[s] the parties' intent to do so." *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (2022); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014),

In *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) the clause at issue was a delegation clause in the parties' arbitrations agreement. Here the court found that the "delegation clauses in the parties' arbitration agreements served as clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability, even

though the parties' agreements also contained forum selection clauses granting " 'exclusive jurisdiction' " to state and federal courts in San Francisco over " 'any disputes, actions, claims or causes of action arising out of or in connection with this Agreement." *Mohamed*, 848 F.3d at 1209 (2016). Also finding that "It is apparent that the venue provision ... was intended ... to identify the venue for any other claims that were not covered in the arbitration agreement.") *Id*.

Here, Temu's terms of use contains an arbitration clause found at paragraph 19 which reads in part:

> **"19.1 Applicability of Arbitration Agreement.** Subject to the terms of this Arbitration Agreement, you and we agree that any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services, any communications you receive, any products sold or distributed through the Services, or the Terms, including claims and disputes that arose between us before the effective date of the Terms (each, a "Dispute") will be resolved by binding arbitration, using the English language, rather than in court, except that: (1) you and we may assert claims or seek relief in small claims court if such claims qualify and remain in small claims court; and (2) you or we may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents). For purposes of this Arbitration Agreement, "Dispute" will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the Terms as well as claims that may arise after the termination of the Terms. "(Def. Mot to Dismiss, Exhibit A, p. 21, Section 19) .

Temu's arbitration clause designates that any dispute, claim or disagreement arising out of or relating in any way to the Plaintiffs' access or use of the service is subject to binding arbitration. Additionally, the terms of services contain an "exclusive venue" clause which states "Any dispute of any sort between you and us that arises out of or in connection

with the Services and is not subject to arbitration or eligible for small claims action, shall be decided exclusively by a court of competent jurisdiction located in New York, New York. (Def. Mot to Dismiss, Exhibit A, p. 20, Section 18.4).

By the terms of the agreement arbitrability is a threshold issue and must be resolved before venue transfer or forum clause enforcement. The terms of service clearly state that any dispute is subject to the arbitration agreement first, and then if the claim is not subject to arbitration it should be decided by a court of competent jurisdiction located in New York. If arbitration governs then forum selection clause is inapplicable and this motion is moot. Temu is improperly trying to enforce a forum-selection clause while the dispute is subject to a binding arbitration agreement.

If Temu truly believes its Terms of Use are binding, then the appropriate mechanism, indeed, the required mechanism, is to move to compel arbitration under Section 3 or 4 of the FAA. In fact, Temu's attempt to sidestep arbitration and jump straight to venue transfer contradicts its own Terms. Further Temu's contention that this case should be moved to New York in order to coordinate with EDNY cases is disingenuous and offers no practical advantage; as most of those cases were compelled to arbitration. (*See* Memorandum and Order Granding Defendant's Motion to Compel Arbitration, *Hu v. Whaleco, Inc.*, 1:23-cv-06962, ECF No. 54 (E.D.N.Y. October 7, 2024). Temu's inconsistent posture, embracing arbitration in some cases and ignoring it in others, demonstrates impermissible forum shopping. Temu's motion to dismiss based on a forum selection clause is premature and should be denied.

**3. <u>If The Court Does Find A Valid Contract Exists, And That The Forum Selection Clause Does Supersede The Arbitration Clause, Then The Appropriate Action Is Not Dismissal, But Rather A Transfer To The Selected Forum.</u>**

The United States Supreme Court has held that the appropriate mechanism to enforce a forum-selection clause in a contract is through a motion to transfer under 28 U.S.C. §

1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 58-59, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013). Under § 1404(a), a district court may transfer a civil action to any other district where it might have been brought.

If the district court does decide that a valid contract was formed by the parties and that the arbitration clause does not supersede the forum selection clause then the appropriate mechanism for enforcement is not a dismissal, but rather a transfer of venue. Additionally, dismissing the action would require the Plaintiffs to bring their case again which would result in prejudice to the Plaintiffs, delay, and cause them to incur additional fees. For those reasons the court should transfer the case, in lieu of a dismissal.

## IV. CONCLUSION

Defendant's motion to dismiss should be denied because Plaintiffs did not agree to the Terms of Use as they were not provided clear and conspicuous notice of the terms and did not take any unambiguous affirmative actions indicating assent. Therefore, Plaintiffs did not legally or validly form a contract and therefore are not subject them to the arbitration clause in that contract. Further, Defendants' motion to dismiss should be denied because even if the court finds Plaintiffs did enter a valid contract, Defendant's 12(b) motion to dismiss is premature as the dispute is subject to a binding arbitration clause which supersedes the forum selection clause under the contract. Finally, if the court does find a valid contract exists, and that the forum selection clause does supersede the arbitration clause, then the appropriate action is not dismissal, but rather a transfer to the selected forum.

POTTER HANDY, LLP

Dated: August 4, 2025

Krista Hemming
Attorneys for Plaintiff(s)