LATHAM & WATKINS LLP
Alexander C.K. Wyman (Cal. Bar No. 295339)
  alex.wyman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Serrin Turner (*pro hac vice*)
  serrin.turner@lw.com
Matthew P. Valenti (*pro hac vice*)
  matthew.valenti@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

*Attorneys for Defendant*
*Whaleco Inc. d/b/a Temu*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re : Whaleco Inc. Malware Litigation*<br><br>This Document Relates To:<br>All Actions | Case No. 2:25-cv-04651-MRA-MAA<br><br>**DEFENDANT WHALECO INC.'S REPLY TO PLAINTIFFS' OPPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER FOR *FORUM NON CONVENIENS***<br><br>Judge: Hon. Mónica Ramírez Almadani<br>Hearing Date: August 25, 2025<br>Time: 1:30 pm<br>Courtroom: 9B |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. Plaintiffs Agreed to the Terms by Registering Temu Accounts ................................................................................................. 2

    B. The Terms Do Not Allow Plaintiffs to Sue Temu in California Court, and the *Forum Non Conveniens* Factors Separately Militate in Favor of Transfer to New York ........................ 7

III. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alatortev v. JetBlue Airways Corp.*,
  795 F. App'x 503 (9th Cir. 2019) .................................................................... 8

*Baglama v. MWV Consumer & Off. Prod.*,
  2013 WL 12200647 (C.D. Cal. Aug. 19, 2013) ................................................ 10

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ........................................................................ 3, 6

*Brooks v. Warnermedia Direct LLC*,
  2023 WL 10706636 (C.D. Cal. Dec. 1, 2023) ................................................... 9

*Eakins v. Whaleco, Inc.*,
  721 F. Supp. 3d 1252 (W.D. Okla. 2024) ......................................................... 4

*Fontanez v. Whaleco, Inc.*,
  53-3032CA-00374 (Fla. Polk Cnty. Ct. Nov. 15, 2023) ..................................... 4

*HTC Corp. v. Acacia Rsch. Corp.*,
  2015 WL 9915938 (C.D. Cal. Sept. 10, 2015) ................................................ 10

*Hu v. Whaleco, Inc.*,
  2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024) .................................................. 4, 5

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ....................................................................... 3

*Kohler v. Whaleco, Inc.*,
  757 F. Supp. 3d 1112 (S.D. Cal. 2024) ..................................................... 4, 5, 6

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020) .................................................................... 6

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ........................................................................ 9

*Navarro v. SmileDirectClub, Inc.*,
  2022 WL 1786582 (N.D. Cal. June 1, 2022) .................................................... 2

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................. 3

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ................................................................................ 2

*Oberstein v. Live Nation Ent, Inc.*,
  60 F.4th 505 (9th Cir. 2023) ..................................................................... 2, 3, 5, 6

*People ex rel. Dep't of Parks & Recreation v. West-A-Rama, Inc.*,
  35 Cal. App. 3d 786 (1973) .................................................................................. 8

*Pixior Glob. Logistics, LLC v. Walmart, Inc.*,
  2023 WL 11802488 (C.D. Cal. Sept. 29, 2023) ................................................. 10

*Silva v. Whaleco, Inc.*,
  2024 WL 4487421 (N.D. Cal. Oct. 10, 2024) ............................................. 4, 5, 6

*Smith v. Whaleco, Inc.*,
  741 F. Supp. 3d 1104 (W.D. Okla. 2024) ............................................................ 4

*Suski v. Coinbase, Inc.*,
  55 F.4th 1227 (9th Cir. 2022) ............................................................................... 9

**COURT FILINGS**

*Ziboukh et al. v. Whaleco, et al.*, No. 1:24-cv-3733-MKB-RML
  (E.D.N.Y. Feb. 18, 2025), ECF No. 78 .............................................................. 10

## I. INTRODUCTION

Plaintiffs' opposition provides no sensible reason why this case should remain in this Court. Plaintiffs concede they "are registered users of the Temu e-commerce platform." Opp. at 2. They acknowledge that one cannot register for a Temu account without clicking on a "Register" button right above text stating: "By clicking Register, you agree to our Terms of Use … ." *Id.* at 4. And they further acknowledge that the Terms contain "both an Arbitration Agreement and an 'Exclusive Venue' clause, which designates New York, New York courts for any litigation not subject to the Arbitration agreement." *Id.* Under no circumstances do the Terms allow claims to be brought against Temu in California court. So what are Plaintiffs doing here?

Plaintiffs make a half-hearted attempt to argue that they never agreed to the Terms, griping that there was no "checkbox" they had to click to indicate agreement when they registered. But the law does not require any such "checkbox," and Temu's registration screen makes perfectly clear that clicking on the button needed to continue with the registration process constitutes assent to the Terms. That is why multiple courts in this Circuit have held that Temu's registration screen gives users adequate notice of the Terms—holdings that Plaintiffs entirely ignore. Moreover, Plaintiffs' counsel themselves, in correspondence with defense counsel, have implicitly acknowledged the Terms are binding on Plaintiffs: They stated that they intended to initiate informal dispute resolution conferences for their clients *pursuant to the Terms*, which require such conferences as a precondition to arbitration. (Plaintiffs backtracked only after defense counsel told them they would have to dismiss their litigation before Temu would schedule such conferences.)

Having no real basis to contest they agreed to the Terms, Plaintiffs argue that, even if they did agree to the Terms, Temu should move to compel arbitration rather than moving to dismiss or transfer for improper forum. If Plaintiffs are conceding their claims are subject to arbitration, then Temu certainly has no objection if the Court dismisses the claims and compels arbitration instead. But if Plaintiffs seek to

litigate over the arbitrability of their claims (despite the delegation provision in the Terms), they are not entitled to forum-shop as to where that litigation occurs. The Terms only provide for two possibilities: arbitration or litigation in New York courts. There is no third option to litigate elsewhere. Moreover, beyond the forum selection clause, standard *forum non conveniens* factors militate in favor of transferring the case to New York, as this copycat litigation is duplicative of lawsuits already pending in the Eastern District of New York.

Lastly, Plaintiffs argue that if the Court finds that the forum selection clause governs, the Court should transfer the litigation rather than dismissing it. This is another non-issue. It makes no difference to Temu whether the Court dismisses or transfers this case. The point is there is no reason for the litigation to continue here.

## II.  ARGUMENT

### A.  Plaintiffs Agreed to the Terms by Registering Temu Accounts

Plaintiffs admit they are "registered users of the Temu e-commerce platform," who clicked on a "large 'Register' button" right above text stating, "by clicking Register you agree to our Terms of Use." Opp. at 4. Yet Plaintiffs claim they did not agree to the Terms when they registered, arguing that there was no "dedicated checkbox" they had to click to indicate their agreement. *Id.* at 7-8. It is well established, however, that such a checkbox—*i.e.*, "clickwrap"—is not necessary for a user to assent to terms of use. *See, e.g.*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023) ("[W]hile clickwrap represents 'the clearest manifestations of assent' ... it is 'not necessarily required.'") (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237–38 (2d Cir. 2016)); *Navarro v. SmileDirectClub, Inc.*, 2022 WL 1786582, at *4 (N.D. Cal. June 1, 2022) ("Courts ... have upheld ... agreements ... even where the user is not required to check a separate dialog box to indicate assent.") (collecting cases). Assent can also be manifested through other actions, if users are put on notice that the action will be taken to indicate their assent— including where users are "presented with a confirmation button" and the

accompanying "text informs the user that, by clicking on this button, 'you agree to our Terms of Use.'" *Oberstein*, 60 F.4th at 515; *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (explaining this concept as "sign-in wrap" and explaining that it is an acceptable form of notice).

Plaintiffs' cited cases do not suggest otherwise. *Nguyen v. Barnes & Noble Inc.* involved a "browsewrap" agreement—where there was no confirmation button or other specific means of indicating consent. The case held that users could not be considered to have impliedly given assent "simply by using the website" at issue. 763 F.3d 1171, 1176 (9th Cir. 2014) (quotation marks omitted). That is fundamentally different from Temu's *sign-in wrap* agreement, which requires a user to click on a specific button to register an account while specifically being told that doing so will constitute acceptance of the Terms. The other case Plaintiffs rely on, *Berman v. Freedom Fin. Network, LLC*, makes clear that the very language used by Temu is sufficient to obtain the user's knowing assent, without a checkbox. 30 F.4th 849, 858 (9th Cir. 2022) (explaining that language such as "By clicking the Continue button, you agree to the Terms & Conditions" sufficiently apprises the user of the "legal significance of the action she must take to enter into a contractual agreement"). Such language was missing in *Berman*, *see id.*, but it is present here.

The screenshot of Temu's registration flow included in Plaintiffs' opposition brief itself shows that Temu notifies users that clicking on the "Register" button constitutes assent to the Terms: Immediately under the button, the screen states, in perfectly legible type, "By clicking Register, you agree to our Terms of Use and Privacy Policy"—with both "Terms of Use" and "Privacy Policy" underlined and in blue, hyperlinked font. Opp. at 4. Moreover, although Plaintiffs neglect to mention it, this is only one screen shown during the account registration process, which is displayed specifically where the user opts to register with an email address. Before reaching this screen, the user is presented with a prior screen allowing them to choose whether to register using an email address, a phone number, or sign-on

services offered by third parties, such as Google. *See Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1119 (S.D. Cal. 2024) (depicting prior screen). That prior screen includes "Continue" buttons for the various registration options, along with text underneath the buttons stating that "By continuing, you agree to our Terms of Service and Privacy Policy," with links to those agreements. *Id.* So, Temu users have to click on *two* buttons to register an account—first a "Continue" button, and then a "Register" button—and they are told *both* times that clicking constitutes agreement to the Terms. *See id.* at 1114 n.5 (noting, as a factor supporting adequate notice, that "'Temu users encounter the 'Terms of Use and Privacy Policy' more than once during the registration process'" (quoting *Silva v. Whaleco, Inc.*, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024)))).

Hence, Temu's registration flow makes it clear that users assent to the Terms when they register. It is little wonder, then, that multiple courts in this Circuit have specifically found that Temu's account registration process provides a valid means of obtaining user consent to the Terms. *See Kohler*, 757 F. Supp. 3d at 1124 ("The Court finds that Plaintiff unambiguously assented to Temu's Terms by pressing the 'Continue' button multiple times prior to purchasing items on Temu's Website."); *Silva*, 2024 WL 4487421 (N.D. Cal. Oct. 10, 2024), at *3-5 ("[T]he Court finds that Plaintiff accepted Temu's Terms of Use through its website's 'sign-in wrap' process, which put Plaintiff on constructive notice of its Terms of Use.").[1]

---

[1] Courts outside this Circuit have reached similar holdings. *See Hu v. Whaleco, Inc.*, 2024 WL 4481439, at *18 (E.D.N.Y. Oct. 1, 2024) ("After balancing the factors, the Court finds that the Registration Screen provided Plaintiffs 'reasonably conspicuous notice' of the Terms, and Plaintiffs, through their conduct, unambiguously manifested assent to the Terms."); *Fontanez v. Whaleco, Inc.*, 53-3032CA-00374, at 5 (Fla. Polk Cnty. Ct. Nov. 15, 2023) (attached hereto as Declaration of Serrin Turner, Ex. A, at 8) (finding that Temu's "full screen user interface design with the 'Continue' button just above the bolded hyperlink to the Terms of Use is conspicuous enough to put a reasonably prudent person on inquiry notice"). As *Hu* notes, there are other out-of-circuit cases that go the other way, but they are unpersuasive. *See* 2024 WL 4481439, at *14-15 (considering, but declining to agree with, *Smith v. Whaleco, Inc.*, 741 F. Supp. 3d 1104, 1112 (W.D. Okla. 2024) and *Eakins v. Whaleco, Inc.*, 721 F. Supp. 3d 1252, 1258, 1260 (W.D. Okla. 2024)).

What *is* surprising is that Plaintiffs do not even mention these holdings—let alone attempt to distinguish or dispute them—in their opposition. Instead, they make perfunctory complaints about Temu's registration screen that are belied by the screenshot of the registration screen itself and that were specifically rejected in *Silva* and *Kohler*.

*First*, Plaintiffs complain about the font size, claiming that "[t]he text referencing the Terms was in a small, inconspicuous font and embedded in a dense block of other text and overshadowed by more prominent interface elements." Opp. at 6-7. Not so. "The language ... is large enough to read," and the reference to the "Terms of Use" "is capitalized and underlined in blue, which stands out from the surrounding text." *Silva*, 2024 WL 4487421, at *4. "Further, [the] Temu registration pop-up windows are uncluttered and contain no extraneous information." *Id.* Thus, "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Kohler*, 757 F. Supp. 3d at 1124 (quoting *Oberstein*, 60 F.4th at 516). "Indeed, '[a] comparison of Temu's notice with the notices at issue in [the Ninth Circuit's decisions in] *Oberstein* and *Keebaugh* reveals that Temu's notice clearly passes the test.'" *Id.* (quoting *Silva*, 2024 WL 4487421, at *4); *see also Hu*, 2024 WL 4481439, at *15 (finding adequate notice "[b]ecause [Temu's] Registration Screen appears uncluttered, is visible at once, and the notice and bolded hyperlinks are reasonably conspicuous and spatially and temporally coupled with a user's creation of an account").

*Second*, Plaintiffs baselessly complain that "the user's action of clicking 'Register' is not clearly labeled as assent to a contract" because the text "merely states that 'by clicking Register, our [sic] agree to our Terms of use and Privacy Policy.'" Opp. at 6. Plaintiffs ignore that this is *precisely* the sort of language the Ninth Circuit has *approved* for sign-in wrap agreements. As the *Berman* case Plaintiffs cite specifically holds: "A user's click of a button can be construed as an unambiguous manifestation of assent ... if the user is explicitly advised that the act

of clicking will constitute assent to the terms and conditions of an agreement." 30 F.4th at 857. That is exactly what Temu's prompt advises users: clicking on the "Register" button (as well as the "Continue" button in the prior screen) will constitute acceptance. *See Kohler*, 757 F. Supp. 3d at 1124 (finding *Berman* satisfied because "Temu's consumers must affirmatively click the 'Continue' button to assent to Temu's Terms").

*Third*, Plaintiffs invoke a requirement of actual notice that does not exist, arguing that "[t]here is no evidence that users are directed to click on the terms of service, or that they must scroll through or affirmatively accept the arbitration or forum selection clauses before completing registration." Opp. at 6-7. The law does not require companies to force users to actually read terms of use. Rather, it is sufficient to provide *constructive* notice of the applicable terms, so that users *can* review the terms if they so choose. *See, e.g.*, *Oberstein*, 60 F.4th at 516 (explaining that under the doctrine of constructive notice, it is enough that "a reasonable user would have seen the notice [of the Terms] and been able to locate the Terms via hyperlink"). Temu does so: It informs users they will be deemed to have accepted the Terms by registering an account, and it provides a link they can click on if they want to read the Terms before accepting. No more is required. *See Kohler*, 757 F. Supp. 3d at 1124 ("Plaintiff asserts that she did not assent because she does not recall seeing Temu's Terms and did not click on any hyperlinks. Plaintiff's statement does not change the analysis."); *Silva*, 2024 WL 4487421, at *4 ("As should be apparent, the definition of a sign-in wrap agreement is that the Terms of Use are *available* to a prospective user, usually through a hyperlink. In other words, a valid sign-in wrap agreement does not require that the Terms of Use appear separately to a consumer unless he or she clicks the hyperlink.") (emphasis in original); *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (A website user "cannot avoid the terms of [the] contract on the ground that he ... failed to read it before signing.").

In short, none of Plaintiffs' objections to Temu's registration flow withstand the slightest scrutiny—nor do Plaintiffs themselves appear to believe them. Tellingly, although Plaintiffs now contest the enforceability of the Terms in their opposition brief, Plaintiffs' counsel tacitly acknowledged that Plaintiffs agreed to the Terms in correspondence with defense counsel. During a telephonic meet-and-confer on June 26, 2025, defense counsel told Plaintiffs' counsel that the Terms require that Plaintiffs' dispute with Temu be pursued through arbitration and that, in order to initiate arbitration, Plaintiffs must first schedule informal dispute resolution conferences. Plaintiffs' counsel followed up by email several weeks later, on July 8, 2025, stating that "[i]t is our intention to proceed with these conferences"—"per the Temu TOS [Terms of Service]." Declaration of Serrin Turner, Ex. B, Jun. 24-Jul. 9, 2025 Email Chain Between K. Hemming and A. Wyman, at 12. Plaintiffs' counsel abandoned this course after defense counsel informed them they would need to voluntarily dismiss their pending court cases if they planned to proceed with arbitration. *Id.* at 11. But notwithstanding their backpedaling, Plaintiffs' stated "intention" to proceed "per the Temu TOS" plainly reflects an understanding that Plaintiffs are bound by those Terms. *Id.* at 12. This tacit admission only underscores what is already evident from the facts and the law: Plaintiffs accepted the Terms by registering accounts with Temu.

**B.   The Terms Do Not Allow Plaintiffs to Sue Temu in California Court, and the *Forum Non Conveniens* Factors Separately Militate in Favor of Transfer to New York**

Aside from their specious arguments that they did not agree to the Terms, Plaintiffs alternatively argue that, even if they did agree to the Terms, Temu cannot enforce the Terms' forum selection clause against them but must instead move to compel arbitration. Opp. at 8-10. The argument does not help Plaintiffs as it does not lead to the conclusion that they can litigate in this Court. To be clear, if the Court wishes to compel arbitration—as Plaintiffs do not appear to contest that the arbitration agreement applies if the Terms apply—Temu would welcome that

outcome.[2] But to the extent Plaintiffs seek to continue litigating in court for whatever reason—including as part of any (misguided) attempt to challenge the enforceability of the arbitration agreement—they should not be permitted to do so in this Court. The point remains that the Terms provide for only two possibilities: arbitration or, for disputes not subject to arbitration, litigation in New York court. There is no option for litigating outside New York, as Plaintiffs are stubbornly seeking to do here. Moreover, given that this litigation is duplicative of litigation already pending in New York federal court, transfer to that court is independently warranted in order to avoid wasting judicial resources and ensure consistent results across cases.

It is a "cardinal rule of construction that a contract is to be construed as a whole, effecting harmony among and giving meaning to all the parts thereof." *Alatortev v. JetBlue Airways Corp.*, 795 F. App'x 503, 504 (9th Cir. 2019) (quoting *People ex rel. Dep't of Parks & Recreation v. West-A-Rama, Inc.*, 35 Cal. App. 3d 786, 793 (1973)). Here, as Plaintiffs seem to recognize, the arbitration provision and the forum selection clause in the Terms are meant to work together: the arbitration clause applies, with limited exceptions, to any dispute "arising out of or relating to" Temu's services; and for any dispute "not subject to arbitration," it "shall be decided exclusively by a court of competent jurisdiction located in New York, New York." ECF No. 16-3, Temu Terms of Use, §§ 18.4, 19.1. The range of possibilities is thus purely binary: either a dispute belongs in arbitration, or it belongs in a New York court. Opp. at 9-10 ("The terms of service clearly state that any dispute is subject to the arbitration agreement first, and then if the claim is not subject to arbitration it should be decided by a court of competent jurisdiction located in New York.").

Despite this, Plaintiffs have not sought to initiate arbitration; nor have they brought suit in New York court. Instead, they have chosen to litigate here in

---

[2] In order to pursue arbitration, however, Plaintiffs would have to comply with the preconditions to arbitration contained in the Terms, including scheduling informal dispute resolution conferences, as they thus far have been unwilling to do. To the extent Plaintiffs intend to challenge that requirement, the Terms do not permit them to do so in California court.

California, which is an avenue that the Terms do not leave open. Plaintiffs' argument that the arbitration clause is logically prior to the forum selection clause—in the sense that only non-arbitrable disputes are meant to be litigated in court—does not somehow imply that Plaintiffs get to bring *arbitrable* disputes in any court of their choosing. The point remains that the Terms do not countenance any litigation outside New York, whether the dispute is arbitrable or not. *See Brooks v. Warnermedia Direct LLC*, 2023 WL 10706636, at *8 (C.D. Cal. Dec. 1, 2023), *adopted*, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023) ("Looking to the contract as a whole, a simpler and more far more plausible interpretation [than the plaintiff's view that a challenge to the arbitration agreement could be brought in any court] is that the forum-selection clause is intended to encompass anything that would not go to arbitration ... ."). For that reason, the litigation should be dismissed—in which case Plaintiffs can pursue arbitration if they so choose (and if they comply with all applicable arbitration-related requirements)—or transferred to the Eastern District of New York, where Temu will move to compel arbitration. The case cannot otherwise proceed in California court consistent with the Terms.[3]

Moreover, separate and apart from the Terms, standard *forum non conveniens* factors—in particular the interests of justice—counsel in favor of transferring this litigation to New York federal court, specifically the Eastern District of New York ("EDNY"). As explained in Temu's opening brief, this matter is blatant copycat

---

[3] Plaintiffs' case citations, Opp. at 8-9, only confuse the issue. In *Suski v. Coinbase, Inc.*, the plaintiff contested that an arbitration clause applied, based on a forum selection clause in another agreement requiring disputes between the parties to be brought in California court, which is where the *Suski* litigation was filed. 55 F.4th 1227, 1230-31 (9th Cir. 2022). Similarly, in *Mohamed v. Uber Techs., Inc.*, the plaintiff contested that an arbitration clause applied based on a contract provision providing for exclusive venue in San Francisco court—where the case had been brought. 848 F.3d 1201, 1209 (9th Cir. 2016). The cases came out different ways based on the facts, but both are inapposite: Here, Temu is obviously not contesting the applicability of its own arbitration clause, nor is the arbitration clause in conflict with the forum selection clause. Rather, the point is that the forum selection clause in Temu's Terms—unlike the ones in *Suski* and *Mohamed*—does not permit suit to be brought in any circumstances in California court, where Plaintiffs have filed this litigation.

litigation based on lawsuits presently pending in EDNY, with allegations lifted virtually verbatim from the complaints filed there. Mot. at 4-5. Even in their opposition brief, Plaintiffs continue to duplicate arguments made in the EDNY litigation, as they contend that Temu's account registration flow fails to provide constructive notice of the Terms—just as the plaintiffs have argued in the *Ziboukh* case pending in EDNY. *See* Pls.' Opp. to Defs.' Mot. to Compel Arbitration, *Ziboukh et al. v. Whaleco, et al.*, No. 1:24-cv-3733-MKB-RML, at 13-15 (E.D.N.Y. Feb. 18, 2025), ECF No. 78.

There is no reason why this Court should separately weigh in on any of these issues. "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicative litigation and inconsistent results." *HTC Corp. v. Acacia Rsch. Corp.*, 2015 WL 9915938, at *3 (C.D. Cal. Sept. 10, 2015) (cleaned up). Those interests strongly favor transfer here. All of the litigation brought against Temu in EDNY has already been deemed related and is pending before a single judge. Transferring this case to that same judge will avoid unnecessarily duplicating litigation across districts and will ensure consistent rulings across proceedings. *Pixior Glob. Logistics, LLC v. Walmart, Inc.*, 2023 WL 11802488, at *5 (C.D. Cal. Sept. 29, 2023) ("The pendency of [a] related action against [the defendant] in EDNY weighs in favor of transfer to avoid duplicative litigation and potentially conflicting rulings on similar issues."); *Baglama v. MWV Consumer & Off. Prod.*, 2013 WL 12200647, at *7 (C.D. Cal. Aug. 19, 2013) ("Where legal issues substantially overlap, transfer is warranted because it would be more convenient and efficient for one court to consider all the issues together.") (cleaned up).

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint, or in the alternative, transfer this action to EDNY pursuant to the doctrine of *forum non conveniens*.

Dated: August 11, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Serrin Turner*
Serrin Turner (*pro hac vice*)
serrin.turner@lw.com
Matthew P. Valenti (*pro hac vice*)
matthew.valenti@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

Alexander C.K. Wyman
alex.wyman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Whaleco Inc., certify that this Reply contains 3,719 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 11, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Serrin Turner*
Serrin Turner (*pro hac vice*)
serrin.turner@lw.com
Matthew P. Valenti (*pro hac vice*)
matthew.valenti@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

Alexander C.K. Wyman
alex.wyman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*