UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04651-MRA-MAAs | Date | August 29, 2025 |
| Title | *In re: Whaleco Inc. Malware Litigation* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING MOTION TO TRANSFER [16]**

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, Transfer for *Forum Non Conveniens*. ECF 16. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motion to Transfer and **DENIES** the Motion to Dismiss without prejudice to renewal before the transferee court.

## I. BACKGROUND

This is a consolidated action consisting of eight identical cases. Plaintiffs include hundreds of individually named users represented by the same law firm: Potter Handy, LLP. They bring this action against Defendants Whaleco Inc., doing business as Temu, PDD Holdings, Inc., formerly known as Pinduodou, Inc., and Does 1–100. All Defendants are represented by the same law firm: Latham & Watkins, LLP. ECF 1-1 at 2. Plaintiffs bring identical claims for violations of California privacy, business, and advertising laws.[1] In sum, Plaintiffs allege that they used Defendants' online shopping platforms—the Temu website and Temu mobile app—in order to browse and purchase low-cost goods manufactured in China, but these platforms harmed them, because they were "actually dangerous malware, surreptitiously granting itself access to virtually all data on a user's cell phone." ECF 1-1 at 3.

[1] Specifically, Plaintiffs allege claims for violations of (1) the Electronic Communications Privacy Act of 1986, (2) the Computer Fraud and Abuse Act, (3) the California Comprehensive Data Access and Fraud Act, (4) the California Invasion of Privacy Act, (5) the California Unfair Competition Law, (6) the California False Advertising Law, and (7) the Right of Privacy Under the California Constitution, as well as a claim for (8) Intrusion Upon Seclusion. ECF 1-1 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04651-MRA-MAAs | Date | August 29, 2025 |
| Title | *In re: Whaleco Inc. Malware Litigation* | | |

These individual actions began in state court. Defendants removed each case to federal court. On June 30, 2025, Defendants filed in each case the instant Federal Rule of Civil Procedure 12(b)(3) Motion to Dismiss or, in the Alternative, Transfer to the Eastern District of New York ("EDNY"). *See, e.g.,* ECF 1, 16. In their Motion, Defendants argue that dismissal or transfer is appropriate, because the Temu platforms contained a valid forum selection clause to litigate all non-arbitrable claims before the EDNY. *Id.* Defendants further argue that Plaintiffs expressly consented to be bound by the agreement containing the forum selection clause, and that the clause is not unreasonable or unjust. *Id.*

As an initial step to manage these nearly identical cases, on July 3, 2025, the Court ordered the parties to show cause as to why the actions should not be consolidated. ECF 17 (citing Fed. R. Civ. P. 42(a)). On July 11, 2025, having received no opposition to the consolidation, *see* ECF 18, 19, the Court consolidated the cases and designated the instant case, case number 2:25-cv-04651-MRA-MAA, as the "master file" for the Consolidated Action, *see* ECF 20 at 1. On August 4, 2025, Plaintiffs filed their Opposition to the Motion to Dismiss or Transfer. ECF 22. On August 11, 2025, Defendants filed their Reply. ECF 23.

## II. LEGAL STANDARD

A party seeking to enforce a forum-selection clause relies on the doctrine of *forum non conveniens*, which is codified at 28 U.S.C. § 1404(a). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 59 (2013) (explaining "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62 (footnote omitted).

The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted). In a typical case where a valid forum-selection clause does not exist, the analysis under section 1404(a) is twofold: first, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought and, second, the court must balance three factors: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. 28 U.S.C. § 1404(a). However, the presence of a valid forum-selection clause "requires district courts to adjust their usual § 1404(a) analysis in three ways":

> First, the plaintiff's choice of forum merits no weight. . . . Second, a court

> evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests . . . . a district court may consider arguments about public-interest factors only. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations. . . . When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Atl. Marine*, 571 U.S. at 62–66. The party challenging the forum-selection clause bears the burden of showing that enforcement of the clause would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2024) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

## III. <u>DISCUSSION</u>

Defendants argue that Plaintiffs filed their actions in the wrong forum because prior to using the Temu platforms, Plaintiffs agreed to a mandatory forum selection clause which stated that any disputes arising from use of the platforms must be either arbitrated or litigated in EDNY. ECF 16 at 8. In response, Plaintiffs argue that 1) the forum selection clause is not binding because they did not legally assent to Temu's terms of service, and 2) if the Court determines that the terms of service are binding, dismissal is premature because the claims are subject to arbitration. ECF 22 at 5–11. The Court addresses these arguments.

### A. Validity of the Forum Selection Clause

"Forum-selection clauses are presumed valid and enforceable, unless unreasonable under the circumstances, and are governed by federal common law and general contract principles, even in diversity." *Arcsona Inc. v. Appirio Inc.*, No. 22-15234, 2023 WL 1793463 (9th Cir. Feb. 7, 2023). "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013–14 (9th Cir. 2024) (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023)). Contracts formed online follow the traditional principles of contract law. *Oberstein*, 60 F.4th at 513; *Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849, 855–56 (9th Cir. 2022) (explaining that "elemental principles of contract formation apply with

equal force to contracts formed online").

"In California, internet contracts are classified by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Keebaugh*, 100 F.4th at 1014 (internal quotations and citations omitted). These internet contracts fall on a spectrum of enforceability. On the low end of this spectrum, courts have consistently held browsewrap agreements, in which an internet user accepts a website's terms of use merely by browsing the site, are unenforceable because the users do not have inquiry notice of the terms and conditions. *Id.* (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014)). On the high end of this spectrum, courts have consistently held that clickwrap agreements, in which a user must click an "I agree" box in order to proceed on the site, are enforceable because users are put on notice as to the existence of the terms and conditions of site usage. *Id.* (citing *Berman*, 30 F. 4th at 856). Sign-in wraps fall in the middle of the enforceability spectrum. *Id.* Courts have held that sign-in wrap agreements *may* be enforceable based on inquiry notice when the following elements are present: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.*

Here, the Temu platforms use sign-in wrap agreements. Users must sign in by providing their email address, phone number, or a sign-on service through a third-party (*e.g.*, Google) and click a "Continue" button. ECF 23 at 7–8. Beneath the "Continue" button is text that states, "By continuing, you agree to our Terms of Service [hyperlinked] and Privacy Policy [hyperlinked]." *Id.* at 8. After a user selects their preferred sign-in type, they are taken to a second page, which requires that users click a "Register" button before they are able to use the Temu platforms to purchase products. ECF 22 at 4 (providing a screenshot of the registration page where users are prompted to create or sign in to an account before continuing); ECF 23 at 8. Although users are not required to scroll through the terms of use and privacy policies in order to continue with the sign-in process or create an account, the policies are hyperlinked beneath the register button in blue, underlined text. *Id.* Plaintiffs argue that the terms and conditions are not sufficiently reasonably conspicuous to put the user on inquiry notice because "the hyperlink to the Terms of Use is not prominent; it is embedded in a small font, below the primary call-to-action, the Register button," and "the user's action of clicking 'Register' is not clearly labeled as assent to a contract." *Id.* at 6.

The Court disagrees that the hyperlink to the Terms of Use is not sufficiently prominent. While it is true that the text of the hyperlink is small, it is proportional to the other text provided

on the webpage.[2] *Id.* The phrase "Terms of Use" is also underlined and written in blue font, which indicates to the user that that it is a hyperlink that will open a separate window. The Ninth Circuit and others district courts in this Circuit have held that similar presentations of terms of use agreements are sufficient to put a reasonable user on notice. *See, e.g.*, *Berman*, 30 F. 4th at 857 (explaining that, while underlining text is insufficient to put a user on notice of the existence of a hyperlink, "use of a contrasting font color (typically blue) . . . can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage."); *Oberstein*, 60 F.4th at 515–16 (explaining that where the Terms of Use hyperlink was "written in bright blue font" and was "conspicuously displayed directly above or below the action button," a "reasonable user would have seen the notice and been able to locate the Terms via hyperlink."); *Keebaugh*, 100 F. 4th at 1020–21 (explaining that a notice stating "by tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy" that was conspicuously placed below the 'Play' button was sufficient to put a reasonable user on notice).

In fact, other California courts examining identical or nearly identical Temu sign-in agreements to the agreements at issue have determined that the Terms of Use hyperlink sufficiently notified those plaintiffs. For example, in *Silva v. Whaleco, Inc.*, a Northern District of California court explained:

> A comparison of Temu's notice with the notices at issue in *Oberstein* and *Keebaugh* reveals that Temu's notice clearly passes the test. As in *Oberstein* and *Keebaugh*, Temu users are presented with hyperlinks to "Terms of Use and Privacy Policy" which are displayed directly below the "continue" button. The language of "Terms of Use and Privacy Policy" is large enough to read, and it is capitalized and underlined in blue, which stands out from the surrounding text. This denotes the existence of a hyperlink to a reasonably prudent internet user. And like the notice at issue in *Oberstein*, Temu users encounter the "Terms of Use and Privacy Policy" more than once during the registration process. Further, Temu registration pop-up windows are uncluttered and contain no extraneous information. Temu further reduces distractions by greying out the product purchase page in the background. Finally, the largest visual on the window is a big orange button with the word "Continue" on it, leaving no mistake that by clicking the Continue button, a user

[2] For example, the screenshot provided clearly shows that phrases such as "All data will be encrypted," "Registration is easy, just fill in the password,", and "Don't use a password from another site, or something too obvious like your pet's name," are all approximately the same font size as the line indicating that pressing the registration button constitutes agreement to the Terms of Use and Privacy Policy. ECF 22 at 4.

would be agreeing to Temu's Terms of Use.

No. 24-CV-02890-SK, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024) (internal citations omitted). Similarly, in *Kohler v. Whaleco, Inc.*, a Southern District of California court explained:

> [T]he format and font of Temu's Registration Prompt resembles the enforceable prompt in [*Oberstein*]. There, the Ninth Circuit found that a website provided constructive notice of the terms to which the consumer would be bound where "crucially, the 'Terms of Use' hyperlink [wa]s conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." Temu's hyperlinked Terms of Use and Privacy Policy are capitalized, legible, and appear in bright blue, underlined font, putting Temu customers on constructive notice that they would be bound by the hyperlinked policies. Additionally, as in *Oberstein*, because Temu's prompt notifies consumers that "By continuing, you agree to our Terms of Use ...," "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink."

*Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1124 (S.D. Cal. 2024) (internal citations omitted) (footnote omitted). Having independently reached the same conclusion, the Court finds that Defendants provided reasonably conspicuous notice to satisfy the first prong of the sign-in wrap agreement enforceability test under *Keebaugh*.

Plaintiffs (wisely) focus their briefing on their notice argument, which is considerably stronger than their second argument: that clicking "Register" is not sufficiently labeled to indicate assent to a contract. It is clear to the Court that the consequences of clicking the "Register" button is clearly labeled. As discussed above, there is only one line of text below the Register button, which states in its entirety: "By clicking Register, you agree to our Terms of Use [hyperlinked] and Privacy Policy [hyperlinked]." ECF 22 at 6. It is difficult to see how Defendants could have made the consequences of pressing the Register button any clearer. Accordingly, the Court finds that, by clicking on the 'Register' and 'Continue' buttons, Plaintiffs unambiguously manifested their consent to be bound by Defendants' Terms of Use under *Keebaugh*.

Having thus determined that a valid forum-selection clause exists, the Court briefly examines whether any public interest factors would preclude the enforcement of the clause.

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04651-MRA-MAAs | Date | August 29, 2025 |
| Title | *In re: Whaleco Inc. Malware Litigation* | | |

### B. Adjusted Section 1404(a) Analysis – Public Interest Factors

Where a valid forum-selection clause exists, in evaluating *forum non conveniens* under section 1404(a), a district court "may consider only public interests" that weigh against the transfer. *Atl. Marine*, 571 U.S. at 51. Those public interest factors are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (internal quotations and citations omitted).

Here, the Court finds that, on balance, the public interest factors weigh in favor of transfer. The first and second factors are most determinative.

*First*, as Defendants point out, because this case concerns the use of the Temu platform via the internet and mobile app, there is no alleged conduct that occurred in California that would meaningfully tie this dispute to the state. ECF 16 at 20. Moreover, none of the Defendants are citizens of California,[3] and most of the individual Plaintiffs are also not citizens of the State. ECF 16 at 20 (estimating that 94 percent of the Plaintiffs are not California citizens). Accordingly, the first factor weighs in favor of transfer.

*Second*, because there are multiple, substantially similar lawsuits pending before the transferee court, that court is already familiar with the governing law. ECF 16 at 21. While the Plaintiffs in this action bring many of their claims under California law, Defendants' Terms of Use policy contains a choice of law provision indicating that New York state law will govern any disputes arising from use of the Temu platform. *Id.* For the reasons explained above, the Court has already determined that Plaintiffs are bound by the Terms of Use agreement, and therefore any court adjudicating this dispute will likely look to both New York law (per the terms of the forum selection clause) and California law (to address the Plaintiff's state law claims), meaning that this court is not better situated or more familiar with the law at hand than the EDNY. Accordingly, the second factor weighs in favor of transferring the case.

*Third*, because this is a consolidated action comprised of thousands of nationwide individual plaintiffs (rather than a typical and much less burdensome Rule 23 class action), it will

[3] Defendant Whaleco (d.b.a. Temu) is a corporate citizen of Delaware and Massachusetts, and Defendant PDD Holdings, Inc. (f.k.a. Pinduoduo, Inc.) is a corporate citizen of the Cayman Islands and Ireland. ECF 1 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-04651-MRA-MAAs | Date | August 29, 2025 |
| Title | *In re: Whaleco Inc. Malware Litigation* | | |

impose a significant burden on whatever court ultimately hears the dispute. Accordingly, the third factor is neutral.

*Fourth*, both the Central District of California and the EDNY are busy districts facing significant congestion. *See, e.g., Cleanview Distribution Grp. LLC v. LGL Holdings, LLC*, No. 2:21-CV-07178-SB-JC, 2021 WL 5969502, at *3 (C.D. Cal. Nov. 12, 2021) (describing the Central District of California as one of the busiest districts in the nation) (internal citations omitted); *Seales v. Panamanian Aviation Co. Ltd.*, No. CV-07-2901 (CPS)(CLP), 2008 WL 544705, at *6 ("Undoubtedly, the Eastern District of New York is a busy district."). Accordingly, the fourth factor is neutral.

*Fifth* and finally, because the case is neither more nor less related to California than it is to New York, the cost of litigation outside the selected forum is neutral. *See* ECF 16 at 22.

Because the first and second public interest factors weigh heavily in favor of transfer and the other factors are neutral, the Court finds that there is no reason to overturn the presumption that the case should be transferred to the district the parties agreed to via the valid forum selection clause.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the convenience of parties and witnesses and the interest of justice weigh in favor of transferring this action to the Eastern District of New York. The Motion to Transfer is therefore **GRANTED,** and this action shall be transferred forthwith. The Motion to Dismiss is **DENIED** without prejudice to renewal before the transferee court.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku